**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

MICHELLE ESCHENBRENNER,       )
                                           )
                  Plaintiff,         )
                                           )
v.                                       )        No. 4: 22 CV 1200 RLW
                                           )
KILOLO KIJAKAZI,              )
Commissioner of Social Security,    )
                                         )
                 Defendant.    )

## MEMORANDUM AND ORDER

This action is before the Court for judicial review of the final decision of the defendant Commissioner of Social Security denying the applications of plaintiff Michelle Eschenbrenner for disability insurance benefits (DIB) under Title II of the Social Security Act, and Supplemental Security Income (SSI) under Title XVI of the Act.  The Court has reviewed the filings and the administrative record as a whole, which includes the hearing transcript and medical evidence.  For the reasons set forth below, the decision of the Commissioner is reversed and remanded.

## I.  BACKGROUND

Plaintiff was born on December 16, 1968, and filed her applications on November 12, 2018.  (Tr. 103-04.)  She alleged an amended December 15, 2018 onset date when she was 49 years old.  (Tr. 39, 103-05.)  In her Disability Report, she alleged disability due to scleroderma, an autoimmune disease that causes inflammation and fibrosis (thickening) in

the skin and other areas of the body; neuropathy; knee and joint pain and swelling; numbness and tingling in her arms and hands;  inflammatory arthritis; fibromyalgia; flexor tenosynovitis, an inflammation of the protective sheath (synovial membrane) that surround the tendons); and Raynaud's syndrome, a disorder that causes decreased blood flow to the fingers.  (Tr. 305.)   Her claims were denied initially, and on reconsideration, and she requested a hearing before an administrative law judge (ALJ).  (Tr. 208-09.)

On November 18, 2021, following a hearing, the ALJ concluded that plaintiff was not disabled under the Act.  (Tr. 10-23.)  The Appeals Council denied review.  (Tr. 1-6.) Accordingly, the ALJ's decision became the final decision of the Commissioner subject to judicial review by this Court under 42 U.S.C. § 405(g).

## II.  ADMINISTRATIVE RECORD

The following is a summary of plaintiff's medical and other history relevant to her appeal.

On November 5, 2018, Plaintiff saw rheumatologist, Farhat Shereen, M.D., reporting generalized pain in her bilateral hands and feet over the past six months and complaining she could not work.  Dr. Shereen noted decreased strength in Plaintiff's upper extremities.  He believed she had synovitis, or inflammation of the synovial membrane, although examination of her hands was difficult due to tenderness. Dr. Shereen ordered diagnostic testing for inflammatory arthritis, inflammatory muscle disease, and connective tissue disease. (Tr. at 378-79.)

- 2 -

Plaintiff saw Dr. Sheeran again on December 10, 2018, with reduced strength and tenderness in her bilateral hands.  Upon exam, she was able to make about 50-70 percent of a fist, and she had developed flexion contractures of the metacarpophalangeal (MCP) (large knuckle) joints. She had symptoms of Raynaud's syndrome in her hands.  Dr. Sheeran noted an MRI of Plaintiff's hands was significant for flexor and extensor tendon tenosynovitis suggestive of inflammatory arthritis.  Dr. Sheeran referred Plaintiff to another rheumatologist, Mian Rizwan, M.D., for a second opinion.   (Tr. at 370-71, 387-88.)

Plaintiff saw Dr. Rizwan on January 3, 2019.  She complained of bilateral hand pain. A musculoskeletal exam revealed Heberden's node, small bony growths on the joints closest to the fingertips; significant restriction in her range of motion in both hands, and evidence of acrocyanosis, a condition that causes hands or feet to turn bluish, white or gray in color.  Dr. Rizwan ordered diagnostic testing and prescribed tramadol, a narcotic pain reliever. (Tr. at 433-40.)

On January 21, 2019, Plaintiff saw Dr. Shereen.   On examination, Plaintiff had synovitis in her MCP and PIP joints, moderate to severe pain in her hands, and her skin seemed to be tight.  Her feet and lumbar spine were tender, and her upper extremity strength was four out of five.  Plaintiff had reduced grip strength and she was able to form a fist to 50 to 70%.   She was very reluctant to take a disease-modifying antirheumatic drug (DMARD), until she saw Dr. Rizwan again in light of possible side effects. (Tr. 381-82.)

Plaintiff returned to Dr. Rizwan on January 24, 2019, and reported continued pain and discomfort in her hands, feet, and knees.  Examination showed continued  acrocyanosis

- 3 -

and decreased range of motion in her hands. Dr. Rizwan diagnosed scleroderma and prescribed hydroxychloroquine, an anti-rheumatic.  (Tr. at 451, 453, 462.)

On March 7, 2019, Plaintiff  saw Dr. Rizwan with continued reports of widespread pain.  Her hand exam was similar to prior exams, with continued restricted range of motion. Dr. Rizwan added methotrexate, an immunosuppressant, to her regimen. (Tr. at 470, 475.)

On April 10, 2019, Plaintiff saw Dr. Rizwan with complaints of  numbness in her arms.  She was unable to make a firm fist and had diffuse hand swelling.  Dr. Rizwan increased Plaintiff's methotrexate and ordered a nerve conduction test. (Tr. at 483, 492.)

On June 14, 2019, Plaintiff reported she was beginning to feel better after starting on methotrexate.  Despite her improvement, she continued to report numbness and tingling in her fingers, as well as ongoing muscle tenderness.  A hand exam reflected continued significant restriction in range of motion in her hands. (Tr. at 497-500.)

Plaintiff saw Dr. Rizwan on September 5, 2019, for a fracture to her left arm from a fall.  Her hand swelling and stiffness had improved.  By December 5, 2019, she was using a sling under orthopedic supervision.  She continued to have pain and discomfort in her bilateral wrists and some Heberden's node.  Notes state her "joint swelling had completely resolved" and her range of motion was "pretty much back to normal on most part."   (Tr. 510-16, 523, 525.)

Plaintiff saw Dr. Rizwan for follow up on April 10, 2020, reporting pain in her hands but that she had "improved a lot" since her last visit and that the numbness in her hands

was "very mild." She reported she had run out of some of her medications about two months earlier, and her joint pain had since increased.  (Tr. at 626.)

On August 14, 2020, Plaintiff saw Dr. Rizwan.  A hand exam indicated she had developed multiple small nodules over her proximal interphalangeal (PIP) (middle knuckle) and distal interphalangeal DIP (fingertip knuckle) joints since her last visit.  She denied joint pain or stiffness.   On examination, the nodules were not tender, and she had no synovitis.  Her strength was five out of five.  Dr. Rizwan thought the nodules could be due to her medications, so he discontinued methotrexate, and prescribed leflunomide, a DMARD, used to treat moderate to severe rheumatoid arthritis.  (Tr. at 635-40.)

On September 10, 2020, nonexamining State agency consultant, Richard Tipton, M.D., opined that Plaintiff was capable of performing a range of "light" work.  He opined she could lift and carry 20 pounds occasionally and 10 pounds frequently, and she could stand, walk, or sit 6 hours in an 8-hour workday.  He assessed several postural and environmental restrictions.  As to her hands, Dr. Tipton opined she would be limited to "frequent" reaching laterally and overhead on the left side.  She could "occasionally" finger and feel due to Raynaud's and inflammatory arthritis … so as to not exacerbate her symptoms.  (Tr. at 79-84, 95-100, 115-122, 136-143.)

Plaintiff saw Dr. Rizwan for follow up on November 11, 2020.  She said she felt like the nodules in her hands were better.  She reported she  could not tolerate leflunomide because it was causing gastrointestinal side effects.  She also reported she had self-

- 5 -

discontinued her prescribed gabapentin, used to treat numbness and nerve pain, and that she preferred to "manage it by supportive measures."  (Tr. at 659, 663.)

On April 28, 2021, nonexamining State agency consultant, Charity Sandvos, M.D., evaluated Plaintiff's physical functioning on reconsideration of her disability determination.  Dr. Sandvos affirmed Dr. Tipton's opinion, including his opinion that Plaintiff would be limited to "occasional" fingering and feeling.  (Tr. at 157-163, 177-183.)

On September 28, 2021, Dr. Rizwan completed a Medical Source Statement – Physical. He noted Plaintiff's diagnoses of Scleroderma and Raynaud's, and that she experienced generalized joint pain, swelling, stiffness, and bilateral hand numbness.  He noted that objective signs of Plaintiff's impairments included "obvious synovitis in bilateral hands," an abnormal nerve conduction test, and positive blood tests.  In light of these impairments, Dr. Rizwan opined Plaintiff could "never" reach, handle, finger, or feel in the competitive work environment.  (Tr. at 703-06.)

On October 8, 2021, Plaintiff saw Dr. Rizwan. She reported feeling "fairly stable," with no new problems.  She continued to have joint pain, but it was "manageable."  (Tr. at 712.)

## ALJ HEARING

On October 19, 2021, Plaintiff appeared and testified to the following before an ALJ.  (Tr. 29-70.)  She has been diagnosed with scleroderma.  Following her diagnosis, her rheumatologist referred her to another rheumatologist, Dr. Rizwan, with expertise in her autoimmune disorder.  At the onset of her condition, she asked her providers when she

- 6 -

would be able to work again and was told she would never be able to return to work.  (Tr. at 43-44.)

Her scleroderma causes her to have cold sensitivity and painful numbness in her hands.  She can stir a pot on a stove, for example, for only about two to three minutes at most.  She can do some chores, but "not a whole lot" due to her symptoms.  She has difficulty vacuuming, so her boyfriend helps around the house.  (Tr. at 44-49.)

She has undergone several types of treatment under Dr. Rizwan, including blood work and medication.  Her medications help some, but she still has hand pain and numbness, particularly when she uses her hands and during the colder seasons of the year. She does "okay" in the summer.  (Tr. at 44-46.)

A vocational expert testified that a hypothetical individual at the light exertional level with limitations that would become plaintiff's RFC could not perform plaintiff's past relevant work.  However, she could perform work as a routing clerk, a marker, and an order caller.  (Tr. at 57-59.)

Plaintiff's counsel then asked the vocational expert about a hypothetical individual with the same limitations except that with a limitation to "occasional" fingering and feeling.  The vocational expert testified that such an individual would be unable to perform the aforementioned jobs of routing clerk, marker, and order caller.  The vocational expert testified that under that hypothetical only one job would remain, that of storage facility rental clerk.  (Tr. at 63-65.)

**DECISION OF THE ALJ**

On November 18, 2021, the ALJ issued a decision finding that plaintiff was not disabled. (Tr. 10-23.) At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 15, 2018, her alleged onset date. At step two, the ALJ found that Plaintiff had the severe impairments of inflammatory arthritis, scleroderma, and Raynaud's syndrome. At step three, the ALJ found that Plaintiff did not have an impairment, or combination of impairments, that met or medically equaled the severity of a listing for presumptive disability at 20 C.F.R. part 404, Subpart P, Appendix 1. (Tr. 16-17.)

The ALJ found Plaintiff had the residual functional capacity (RFC) to perform "light" work as defined under the regulations with additional limitations:

> which would involve exerting up to 20 pounds of force occasionally or 10 pounds of force frequently or a negligible amount of force constantly and sitting, standing or walking up to 6 hours in an 8 hour workday with normal breaks, except: a sit/stand option defined as allowing the claimant to alternate between sitting and standing/walking at 45 minute intervals throughout the day while remaining on task; occasionally push or pull; never climb ladders, ropes or scaffolds but can occasionally climb ramps or stairs; occasionally balance, stoop, kneel, crouch, and crawl; frequently reach, handle or finger. Claimant should avoid concentrated exposure to vibration and all exposure to the extremes of heat and cold, operational control or working in proximity to hazardous machinery, and unprotected heights.

(Tr. at 17).

- 8 -

At step four, the ALJ found that Plaintiff could not perform her past relevant work of grocery bagger/courtesy clerk.   Relying on vocational expert testimony, the ALJ concluded Plaintiff could perform work existing in significant numbers in the national economy, including light work as a routing clerk, marker, and order caller.   Accordingly, the ALJ concluded that plaintiff was not disabled under the Act.  (Tr. 22-23, 57-59.)

## III.  LEGAL STANDARD

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole.  42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Estes v. Barnhart, 275 F.3d 722, 724 (8th Cir. 2002).  Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion.   Johnson v. Apfel, 240 F.3d 1145, 1147 (8th Cir. 2001).   The "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings." Coleman v. Astrue, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted).  "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis." Id. (internal quotation marks and citations omitted.  Under this test, the Court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's decision." Reece v. Colvin, 834 F.3d 904, 908 (8th Cir. 2016). The Court "do[es] not reweigh the evidence presented to the ALJ" and will "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." Id. The ALJ will

- 9 -

not be "reverse[d] merely because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently."  KKC ex rel. Stoner v. Colvin, 818 F.3d 364, 370 (8th Cir. 2016).

To be eligible for DIB and SSI under the Social Security Act, plaintiff must prove she is disabled.  Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001); Baker v. Sec'y of Health & Hum. Servs., 955 F.2d 552, 555 (8th Cir. 1992).  The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  An individual will be declared disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process.  See 20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity. If the claimant is working, disability benefits are denied. Second, the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments, meaning that which significantly limits his ability to do basic work activities.  If the claimant's impairment is not severe, then he is not disabled.

- 10 -

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in 20 C.F.R., Part 404, Subpart P, Appendix 1, the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), (d).

At step four, if the claimant's impairment is severe but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the RFC to perform his or her past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(5)(i).  An RFC is "defined as the most a claimant can still do despite his or her physical or mental limitations." Martise v. Astrue, 641 F.3d 909, 923 (8th Cir. 2011); see also 20 C.F.R. § 416.945(a)(1). Ultimately, the claimant is responsible for providing evidence relating to his RFC, and the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3).  If, upon the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv).

At step five, the Commissioner evaluates various factors to determine whether the claimant is capable of performing any other work in the economy.  If the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production shifts to the Commissioner to show the claimant maintains the RFC to perform work that exists

in significant numbers in the national economy.  See Brock v. Astrue, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work which exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R. § 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled. Id. In the fifth step, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. Hensley v. Colvin, 829 F.3d 926, 932 (8th Cir. 2016).

## IV.  DISCUSSION

Plaintiff  argues the ALJ (1) failed to reconcile conflicts between the assessed RFC and the medical opinions of state agency consultants Drs. Tipton and Sandvos in contravention of SSR 96-8p; and (2) failed to support the RFC with substantial evidence because he failed to identify medical evidence that supported the conclusion that she could finger "frequently."  The Commissioner counters that the ALJ's discussion of the record evidence early in the decision supports his finding that Plaintiff could use her hands "frequently."  The Court agrees with Plaintiff.

 "The Commissioner must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations."  Hensley v. Colvin, 829 F.3d 926, 931-32 (8th Cir. 2016) (citation omitted).  "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's

- 12 -

ability to function in the workplace." However, there is no requirement that an RFC finding be supported by a specific medical opinion." Id. at 932 (citation omitted). "[I]n evaluating a claimant's RFC, an ALJ is not limited to considering medical evidence exclusively. Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner." Cox v. Astrue, 495 F.3d 614, 619-20 (8th Cir. 2007) (citation omitted).

When evaluating medical opinion evidence, the ALJ will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinions, including those from Plaintiff's medical sources. See 20 C.F.R. § 404.1520c(a). The regulations require the ALJ to evaluate the persuasiveness of medical opinions, and the most important factors the ALJ considers are supportability and consistency. See 20 C.F.R. § 404.1520c(b). Other factors which "will be considered" and about which adjudicators "may but are not required to explain" are the medical source's "treatment relationship" with the claimant, including the length, frequency, purpose and extent of the treating relationship, and whether the source has an examining (as opposed to non-examining) relationship with the claimant; specialization; and "other factors" such as whether the source has familiarity with other evidence in the claim or understanding of the Administration's disability program's policies and evidentiary requirements. See 20 C.F.R. § 404.1520c(b), (c) (2017).

The ALJ is required to consider all medical opinions in the record. SSR 96-8p, 1996 WL 374184, at *7 (Soc. Sec. Admin. July 2, 1996). If the RFC formulated by the ALJ

- 13 -

conflicts with a medical opinion, the ALJ is required to explain why the opinion was not

adopted.  Id. Further, in assessing the evidence within the record, the ALJ is required to

"explain how any material inconsistencies or ambiguities in the evidence in the case record

were considered and resolved."  Id.

Here, the two state agency doctors, Drs. Tipton and Sandvos, both opined that

Plaintiff was limited in her ability to "occasionally finger and feel". [1] (Tr. 79-84, 95-100,

115-122,  136-143,  157-163,  177-183.)   In his decision, in assessing these doctors'

opinions, the ALJ initially found the opinions "persuasive," and indicated their opinions

were generally consistent with the evidence within the record at that time.  (Tr. at 20-21.)

The ALJ then qualified his finding, however, stating that he found their opinions only

"partially persuasive," because additional record evidence submitted after Drs. Tipton and

Sandvos's review warranted an RFC which was "more limiting than assessed."  (Tr. at 21.)

In the RFC finding, the ALJ included an additional sit/stand option based on Plaintiff's

testimony that she could stand and sit for 45 minutes to an hour before needing to change

positions.  (Tr. 17, 47, 51.)  The ALJ also found that Plaintiff could only occasionally

perform most postural activities, whereas the consultants found that Plaintiff could

frequently perform them.  (Tr. 17, 80, 96, 116-17, 138-39, 158, 178.)

---

[1] "Occasional" is defined as an "[a]ctivity or condition [that] exists up to one-third of the
time." POMS DI 25001.001(A)(34).  "Fingering" is defined as "[p]icking, pinching, or
otherwise working with the fingers primarily (rather than with the whole hand or arm as in
"Handling")."  POMS  DI  25001.001(A)(31).   "Feeling"  is  defined  as  "[p]erceiving
attributes of objects and materials such as size, shape, temperature, or texture, by means of
receptors in the skin, particularly those of the fingertips."  POMS DI 25001.001(A)(29).

However, despite the ALJ initially crediting the opinions of Drs. Tipton and Sandvos, qualified by the ALJ's assertion that even greater limitations were warranted, the ALJ then declined to adopt their opinion that limited fingering and feeling to "occasional," and instead formulated an RFC that limited fingering to "frequent," and which left Plaintiff's ability to "feel" unrestricted.[2]  (Tr. at 17.)  Contrary to the requirements of SSR 96-8p, the ALJ did not explain his rationale behind omitting opined limitation to "occasional" fingering and feeling.  1996 WL 374184, at *7 (requiring an ALJ to explain why he or she did not adopt an opinion); see Blankenship v. Kijakazi, 2022 WL 4464799, at *3 (E.D. Mo. Sept. 26, 2022) (citing cases holding that the ALJ should have either explained his reasons for discounting an opined limitation or included it in the RFC assessment.)  This was error.

Noerper v. Saul. 964 F.3d 738 (8th Cir. 2020) is similar to the case at hand.  In *Noerper*, the ALJ determined the plaintiff could stand and walk for six hours per day.  The Eighth Circuit remanded, concluding there was "simply no reliable evidence" providing a basis for the specific conclusion that the plaintiff could stand or walk for 6 hours in an 8-hour workday.  Id. at 746-47.  Although there was record evidence indicating a loss of cartilage in the knee, the court held such evidence could not support the RFC because the degree to which the loss of cartilage imposed functional limitations on the plaintiff was not self evident.  Id. at 746.  The ALJ "may not simply draw his own inferences about plaintiff's

---

[2] "Frequently" is defined as an activity or condition that "exists from one-third to two-thirds of the time."  POMS DI 25001.001(A)(34).

functional ability from medical reports." Id. at 746-47 (quoting Combs v. Berryhill, 878 F.3d 642, 646 (8th Cir. 2017)).  Accordingly, the court remanded the case, in part, due to the "absence of evidence translating the medical evidence and subjective complaints into functional limitations…." Id. at 747.

Noerper is instructive.  In this case, although the ALJ concluded that Plaintiff was capable of "frequent" fingering and unlimited feeling, he cites no record evidence providing a basis for that specific conclusion.  Of particular note is the fact that Plaintiff's impairments, inflammatory arthritis, scleroderma, and Raynaud's syndrome, caused limitations in her hands.  In interpreting this information, the ALJ here, as in Noerper, impermissibly drew inferences about the functional significance of these medical evidence. In other words, the ALJ provided no basis from the record evidence to conclude how Plaintiff's pain, swelling, numbness, and restricted range of motion, functionally impacted her hands.  In interpreting this information, the ALJ was required to find some evidence to "translate the medical evidence and subjective complaints into functional limitations…." Noerper, 964 F.3d at 747. Because the ALJ failed to do so, remand is required.  Cf., Masden v. Saul, 2021 WL 3172934, at *2 (W.D. Mo. July 27, 2021) (having found the doctor's opinions "persuasive," the ALJ did not explain why she did not include these limitations in the RFC); Bradley v. Kijakazi, 2022 WL 4482407, at *8 (E.D. Mo. Sept. 27, 2022) (remand is required when an ALJ finds an opinion "partially persuasive," but fails to reconcile that opinion with the assessed RFC or resolve which portions of his opinion were unpersuasive."); Ferguson v. Saul, 2021 WL 3215097, at *2 (W.D. Mo. July 29,

- 16 -

2021) (remand is required because, after finding the opinion "somewhat persuasive," the ALJ did not explain how he incorporated these limitations into the RFC or provide reasons for discounting the limitations in sitting and standing as required by SSR 96-8p.").

The Court concludes remand is required because the ALJ's decision did not properly reconcile the opinions of Drs. Tipton and Sandvos with the formulated RFC.  It follows that that they ALJ failed to assess an RFC that is supported by substantial evidence.

## VI.  CONCLUSION

For the reasons set forth above, the Court finds the ALJ erred.  Therefore, the Court remands this matter to the Commissioner for further proceedings.  On remand the ALJ should reconcile the medical opinion evidence with the formulated RFC and formulate an RFC that is supported by substantial evidence.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **REVERSED** and **REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum and Order.

A separate judgment will accompany this Memorandum and Order.

_Ronnie L. White_
_____
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**

Dated this 18th day of December, 2023.

- 17 -